**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ESTES EXPRESS LINES, INC. t/a ESTES AIR,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MACY'S CORPORATE SERVICES f/k/a FEDERATED CORPORATE SERVICES, et al.,<br><br>　　　　　Defendants. | Civil Action No.: 08-cv-3582 (PGS)<br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

　　　　This is a breach of contract action filed by Estes Express Lines ("Plaintiff" or "Estes") against various Macy's-related defendants (collectively, "Macy's" or "Defendants") for failure to pay freight charges.  Macy's refuses to pay Estes because it claims that one of its wholesalers, Sanidown, Inc., contracted with Estes.  However, Estes asserts that it may seek recovery from either Sanidown or Macy's.  Currently before the Court are Plaintiff's and Defendants' motions for summary judgment and four motions to strike Defendants' affidavits.  For the following reasons, the Court will deny Plaintiff's motion for summary judgment, grant Defendants' motion for summary judgment, and deny Plaintiff's motions to strike.

I. **BACKGROUND**

Macy's is a retail company that sells a range of merchandise, including apparel and accessories, cosmetics, home furnishings and other consumer goods, in 45 states. As part of this nationwide retail operation, Macy's contracts with wholesalers to purchase products for resale. Sanidown is a wholesaler that sells Macy's feather, down and synthetic products such as pillows, featherbeds and comforters.

On August 11, 2006, Macy's filed suit against Sanidown in the Southern District of New York after allegedly discovering that certain of Sanidown's products were defective. (Franklin Aff. ¶ 3.) As a result of this lawsuit, Sanidown agreed to remove the nonconforming products at its own expense from four Macy's Central Return Centers located in New Jersey, Connecticut, New York and California and return them to Sanidown in Union, New Jersey. (1st May Aff. Ex. F.)[1] On December 27, 2006, Macy's and Sanidown memorialized their agreement in a joint stipulation, which was subsequently so-ordered by the court on January 4, 2007 (the "Macy's-Sanidown Stipulation"). (*Id.* Ex. F.)

Upon reaching an agreement with Macy's, Sanidown contacted Estes to negotiate shipping costs. (Franklin Aff. ¶ 6.) On December 11, 2006, Senior Vice President of Operations Perry Sella e-mailed Estes Sales Representative Keith Young requesting a "quote [for] the best rates you can give me to make this the most affordable move possible." (1st May Aff. Ex. G.) The e-mail also provided an estimate of the total number of trailers that would be required to ship Sanidown's

---

[1] Defendants filed three affidavits bearing the same name, which the Court defines as follows to alleviate confusion: the May 1, 2009 May Affidavit (the "1st May Affidavit"); the June 1, 2009 May Affidavit (the "2nd May Affidavit"); and the June 15, 2009 May Affidavit (the "3rd May Affidavit"). For its part, Plaintiff filed four certifications in support of its motions to strike all bearing the same name.

products. Sanidown and Estes eventually agreed that Estes would pick-up and ship Sanidown's products for $65,000. (1st May Aff. Ex. H.) However, this figure increased to $107,516.55 based upon, among other things, increased loads and altered locations. (*Id.* Ex. K.) Macy's did not have "any involvement" in the hiring of or negotiations with Estes. (Franklin Aff. ¶ 6.)

After Sanidown selected Estes, on December 22, 2006, Macy's in-house counsel Michael Franklin alerted personnel at the Central Return Centers that they would be contacted by Estes to arrange dates and times for pick-up. (*See id.* ¶ 8.) In addition, Franklin planned to "instruct the point people at the [Central Return Centers] to 'ensure they create a bill of lading or freight bill for each trailer." (*Id.*) According to Franklin, the bills of lading or freight bills were intended to create receipts for each shipment, not "to function as contracts of carriage or otherwise allocate liability for the freight charges" because "payment to Estes was purely a matter of contract between Sanidown and Estes made pursuant to the Order entered by the Court in the Macy's v. Sanidown litigation." (*Id.* ¶ 9.) The bills of lading did not, however, designate the consignor or consignee; nor was the nonrecourse clause marked. (Compl. Ex. A.)[2]

In late December 2006, Estes began transporting Sanidown's goods from Macy's Central Return Centers to Sanidown's Union, New Jersey facilities in 49 separate shipments. (1st May Aff. Ex. J ¶ 6.) After each of these shipments, Estes sent bills of lading and invoices to Sanidown. (Oct. 15, 2008 Mulloy Aff. Ex. 1; 1st May Aff. Ex. J.) On these bills of lading, Estes listed Sanidown as the consignee and Macy's as the "shipper," but also indicated the following: "BILL CHARGES TO:

---

[2] Marking the nonrecourse clause in a bill of lading relieves the consignor of liability. *Spedag Ams., Inc. v. Petters Hospitality & Entm't Group LLC*, No. 07-80576-CIV, 2008 WL 3889551, *2 (S.D. Fl. Aug. 18, 2008). Plaintiff admits that it would not have filed suit against Defendants had this provision been marked. It is not even clear, however, that Macy's bills of lading contain a nonrecourse clause.

SANIDOWN" at its Union, New Jersey address. (*Id.*) Notably, Estes did not send any bills of lading or invoices to Macy's or inform Macy's of the status of Sanidown's account. (1st May Aff. Ex. D (Mulloy Dep. 40:11-17).) Nor did Macy's ever promise to pay for the shipments. (*Id.* (94:16-19).)

By February 7, 2007, Sanidown had yet to make a single payment to Estes. (*Id.* (95:20-25).) As a result, on May 17, 2007, Estes filed a four count complaint in this District against Sanidow. *Estes Air Transp. Servs. v. Sanidown, Inc.*, 07-cv-02351-SDW. Estes also named in their suit Federated Logistics and Operations, a Macy's-related entity. (*Id.*) However, on February 13, 2008, Estes voluntarily dismissed Macy's. (*See* Franklin Aff. ¶ 10.) According to Defendants, Estes dismissed Macy's after it was made clear that Macy's had "no agreement with Estes, had no involvement in the negotiations with Estes, [and] did not hire Estes . . . ." (*Id.*)

On December 8, 2008, Estes obtained a judgment against Sanidown for $107,516.55, which represented the total of its freight bills, plus $37,630.79 in so-called collection fees. (1st May Aff. Ex. L.)[3] Estes's collection fees originated from terms and conditions, which were incorporated into Sanidown's agreement with Estes by virtue of an air waybill. Since Macy's was not involved in either the selection of or negotiations with Estes, it is undisputed that Macy's was never provided with a copy of either of these documents. (*Id.* Ex. D (Mulloy Dep. 34:4-9).)

Estes has not collected on its judgment because Sanidown allegedly has no assets and is no longer in operation. (*Id.* (90:14-17).) As a result, Estes now seeks to recover against Macy's. On April 15, 2008, Estes filed a complaint in the United States District Court for the Central District of

---

[3] Initially, Estes obtained an arbitration award against Sanidown for $107,516.55 plus costs and interest. However, Sanidown thereafter filed a demand for a trial de novo and Estes filed a motion for summary judgment, which went unopposed and was eventually granted. (1st May Aff. Ex. L.)

California against Macy's alleging three causes of action: (1) breach of transportation contracts; (2) quasi-contract; and (3) open account. According to the complaint, Sanidown and Macy's are jointly liable because Macy's issued bills of lading for each shipment. (*See* Compl. Ex. A.) On July 15, 2008, the California district court granted Defendants' motion to transfer this matter to New Jersey. Thereafter, both Plaintiff and Defendants moved for summary judgment.[4] Plaintiff also filed a separate motion to strike in part each of the four affidavits filed by Defendants in connection with the summary judgment motions: the Franklin Affidavit; the 1st May Affidavit; the 2nd May Affidavit; and the 3rd May Affidavit.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotations omitted). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241,

---

[4] The parties briefing on the pending motions was substantially enlarged by two factors: first, simultaneous motions for summary judgment were filed, not cross-motions pursuant to Local Civil Rules 7.1(h) and 7.1(d)(3); and second, Plaintiff filed a motion to strike for each of the four challenged affidavits rather than an omnibus motion.

247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations. *Anderson*, 477 U.S. at 248. "[U]nsupported allegations" are insufficient to defeat summary judgment. *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor -- that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

### III.  DISCUSSION

#### A.  Plaintiff's Motions to Strike

Before discussing the parties' motions for summary judgment, the Court will first address Plaintiff's motions to strike. As Defendants are quick to point out, Plaintiff's motions are generally an attempt to avoid the merits of summary judgment through an overly restrictive reading of both the Federal Rules of Civil Procedure and the Rules of Evidence.

#### 1.  Franklin Affidavit

Plaintiff seeks to strike the Franklin Affidavit as argumentative and because it contains legal conclusions regarding the Macy's-Sanidown Stipulation and the Macy's bills of lading. Franklin explains that pursuant to the stipulation "Sanidown agreed to make all the arrangements for removal of the recalled Sanidown goods and pay all costs associated with shipping those goods . . . ."

(Franklin Aff. ¶ 5.) With respect to Macy's bills of lading, Franklin notes that they "were not intended to function as contracts of carriage or otherwise allocate liability for freight charges." (*Id.* ¶ 9.) Plaintiff claims that these statements inappropriately cross the line between fact and conclusion.

Pursuant to Rule 56(e), a party may file an affidavit in support of or in opposition to a motion for summary judgment if "made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show[ing] that the affiant is competent to testify on the matters stated." *See also* L. Civ. R. 7.2(a) ("Affidavits shall be restricted to statements of fact within the personal knowledge of the affiant. Argument of the facts and the law shall not be contained in affidavits. Legal arguments and summations in affidavits will be disregarded by the Court and may subject the affiant to appropriate censure, sanctions or both.").[5] In applying this rule, courts have struck affidavits in whole or in part that contain legal arguments or information not based upon personal knowledge. *See, e.g.*, *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 665 n.3 (3d Cir. 2007).

The Franklin Affidavit satisfies the standard set forth in Rule 56(e). The Franklin Affidavit is not argumentative; nor does it contain legal conclusions. Franklin was an in-house and litigation attorney responsible for ensuring compliance with the Sanidown-Macy's stipulation. Given these responsibilities, Franklin can and does offer a factual, first-hand account of the purpose of both the stipulation and bills of lading. *Compare $487,825.000 in U.S. Currency*, 484 F.3d at 665 n.3.

---

[5] Neither Federal Rules of Civil Procedure nor the Local Rules explicitly authorize a motion to strike an exhibit to an affidavit. Rule 12(f) of the Federal Rules states that only a "pleading" may be struck. Local Rule 7.2 states that a court may "disregard" (not strike) an affidavit, or censure or sanction the affiant. Accordingly, courts in this District sometimes deny motions to strike exhibits as "procedurally incorrect." *In re Schering-Plough Corp.*, Civil Action No. 08-CV-397 (DMC), 2009 WL 1410961, at *2 (D.N.J. May 19, 2009). In this case, however, the Court will consider Plaintiff's motions to strike on the merits.

Plaintiff also argues that the Franklin Affidavit fails to comply with Rule 56(e)'s personal knowledge requirement. The Franklin Affidavit states that "[t]he facts set forth in this Affidavit are based on my personal knowledge and my review of relevant business records and files relating to this case. If called as a witness, I could and would testify competently to such facts under oath." (Franklin Aff. ¶ 1.) According to Plaintiff, the Franklin Affidavit violates Rule 56(e) because "Franklin fails to affirm that he is currently competent to testify," only that he could testify competently in the future. Plaintiff thus attempts to draw a fine distinction between the language of the rule and the representations of Franklin in his affidavit.

The Court, however, finds no significance in Plaintiff's distinction between the language of Rule 56(e) and Franklin's representations. Franklin's representation closely tracks the language of Rule 56(e). Thus, the Court will not strike the Franklin Affidavit.

### 2.  1st and 2nd May Affidavits

Plaintiff also seeks to strike Exhibits G, H, I, N of both the 1st and 2nd May Affidavits.[6] Exhibit G is a December 11, 2006 e-mail from Sella to Young; Exhibit H is a February 16, 2007 e-mail from Young to Vince Radford, another Estes employee; Exhibit I is a May 7, 2007 e-mail from Young to Sella; and Exhibit N is a sample bill of lading obtained from Estes's website. Plaintiff claims that May, as an attorney in the litigation (and in-house counsel for Macy's), has no personal knowledge of these exhibits because he did not generate or receive the documents prior to litigation.

Plaintiff's argument, however, fails on two accounts. First, Plaintiff misreads the May Affidavit. May is not attesting to the facts contained within the attached documents, but merely

---

[6] The 1st and 2nd May Affidavits are largely identical except that the 2nd May Affidavit includes two additional exhibits, Exhibit O and Exhibit P. Exhibit O is not at issue in Plaintiff's motions to strike, and Exhibit P is a copy of the Franklin Affidavit, which is discussed above.

offering true and accurate copies of documents produced in discovery. Surely, May has personal knowledge as to whether he has submitted true and accurate copies of documents produced in discovery. Second, Plaintiff ignores the reality that filing documents pursuant to attorney declaration is a well established practice. *See, e.g.*, *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co., Inc.*, 642 F. Supp. 2d 493, 511 (W.D.N.C. 2009). "Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." *Anand v. BP W. Coast Prods. LLC*, 484 F. Supp. 2d 1086, 1092 n. 11 (C.D. Cal.2007). Accordingly, courts have warned litigants such as Plaintiff that "[i]t is disingenuous and wasteful" to object to one's own documents based upon personal knowledge or authentication. *Id.* (quoting *Comm. Data Servers, Inc. v. IBM*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003)). Thus, the Court will not strike Exhibits G, H, I, N of the 1st and 2nd May Affidavits for lack of personal knowledge or authenticity.

Plaintiff also asserts (without argument or citation) that Exhibits G, H, I, N of the 1st May Affidavit constitute hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Party admissions, however, do not constitute hearsay. Pursuant to Rule 801(d)(2), "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity . . . ." Moreover, even where a statement constitutes hearsay, a court may consider it on summary judgment "if the party offering the evidence could satisfy the applicable admissibility requirements at trial." *Robinson v. Hartzell Propeller Inc.*, 326 F. Supp. 2d 631, 645 (E.D. Pa. 2004) (citing *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 (3d Cir.1996)), *appeal dismissed*, 454 F.3d 163 (3d Cir. 2006). "For

9

example, hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e. in a form that would be admissible at trial. " *Id.* (internal quotations omitted).

Exhibits H and I do not constitute hearsay because they are party admissions. Exhibits H and I are statements made by Estate's representatives offered against Estes. Exhibit G is not a party admission, but is nonetheless capable of being admissible at trial through direct testimony. *Robinson*, 326 F. Supp. 2d at 645. Thus, the Court will not strike Exhibits G, H or I of the 1st and 2nd May Affidavits based upon hearsay.[7]

### B. Motions for Summary Judgment

Having determined that Plaintiff's motions to strike should be denied, the Court will now address the parties' motions for summary judgment. In support of its summary judgment motion, Plaintiff asserts that Macy's is responsible for freight charges because Macy's issued the bills of lading for each shipment. Defendants, however, claim that Sanidown is solely responsible to Estes for freight charges because of Sanidown's verbal agreement with Estes. The primary issue, therefore, is what alleged contract should govern liability for freight charges, the bills of lading issued by Macy's or Sanidown's agreement with Estes.

#### 1. Breach of Transportation Contracts

A bill of lading operates as both a basic transportation contract between a consignor and a carrier and as a receipt. *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982); *EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1050 (3d Cir. 1993). As such, a bill of lading is

---

[7] The Court has not considered Exhibit N of the 1st and 2nd May Affidavits or the 3rd May Affidavit in its summary judgment analysis. Accordingly, it is unnecessary to rule on whether these documents should be struck from the record.

10

subject to general rules of construction under contract law. *EF Operating*, 993 F.2d at 1050 (citing *Tex. & Pac. R. Co. v. Reiss*, 183 U.S. 621, 629-31 (1902)). The terms and conditions of a bill of lading bind the shipper and all connecting carriers. *S. Pac. Transp.*, 456 U.S. at 342.

A typical bill of lading includes the following information: "it names the contracting parties, specifies the rate or charge for transportation, and sets forth the agreement and stipulations with respect to the limitations of the carrier's common-law liability in the case of loss or injury to the goods and other obligations assumed by the parties or to matters agreed upon between them." *Schneider Nat'l Carriers, Inc. v. Rudolph Express Co., Inc.*, 855 F. Supp. 270, 274 (E.D. Wisc. 1994); *see also* 49 C.F.R. § 373.101 ("Every motor common carrier shall issue a receipt or bill of lading for property tendered for transportation in interstate or foreign commerce containing the following information: (a) Names of consignor and consignee[;] (b) Origin and destination points[;] (c) Number of packages[;] (d) Description of freight[;] (e) Weight, volume, or measurement of freight (if applicable to the rating of the freight).").

Under the default terms of a bill of lading, "the consignor remains primarily liable for the freight charges." *Id.* However, a consignor can avoid liability for freight charges in a number of ways. For example, a consignor can mark what is called a "nonrecourse" clause in the bill of lading. "If the nonrecourse clause is signed by the consignor and no provision is made for the payment of freight, delivery of the shipment to the consignee relives the consignor of liability." *Spedag Ams., Inc. v. Petters Hospitality & Entm't Group LLC*, No. 07-80576-CIV, 2008 WL 3889551, *2 (S.D. Fl. Aug. 18, 2008) (quoting *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 478-79 (9th Cir. 2000)). A consignor can also arrange for execution of a separate transportation contract. "[P]arties are generally free to assign liability for the payment of freight charges through

contract separate from the bill of lading, effectively modifying the default rules on either shipper or consignee liability by contract." *Id.* at *3 (citing *Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.*, 265 U.S. 59, 66-67 (1924)).  When a separate contract is executed, the bill of lading "serves only as a receipt for the transfer of the goods, and will not serve to alter the terms of the previous agreement."  *Vanlab Corp. v. Blossom Valley Foods Corp.*, No. 04-CV-6183, 2005 WL 43772, at *3 (W.D.N.Y. Jan. 10, 2005) (citing *Greenstone Shipping Co., S.A. v. Transworld Oil, Ltd.*, 588 F. Supp. 574, 579-80 (D. Del. 1984)).

The parties' relationship in this case is defined by the contract entered into (and admitted by) Estes and Sanidown and not a bill of lading.[8]  *Spedag*, 2008 WL 3889551, *2.  According to a February 16, 2007 e-mail from Estes Sales Representative Keith Young to an Estes account collections manager, "[t]here was an original verbal agreement" between Estes and Sanidown that the "project would be done for $65,000" and that additional charges may apply, if appropriate.  (1st May Aff. Ex. H.)  This contract is further evidenced by Estes's own bills of lading and invoices indicating Macy's as the "shipper," but stating the following: "BILL CHARGES TO: SANIDOWN."  (Oct. 15, 2008 Mulloy Aff. Ex. 1.)

In light of this contract of carriage between Estes and Sanidown, Macy's bills of lading served only as receipts for the transfer of goods.  Indeed, Macy's bills of lading lack basic information necessary to create an enforceable contractual relationship.  For example, Macy's bills

---

[8] As a matter of general contract law, oral agreements are enforceable through a party's admission.  *See Integrity Material Handling Sys., Inc. v. Deluxe Corp.*, 317 N.J. Super. 406, 415 (App. Div. 1999) ("[W]hen a party admits to making an oral contract, he should be held to this bargain.").  Even more pertinent, oral agreements for the transportation of goods are also enforceable.  *Mo., K. & T. Ry. Co. of Tex. v. Patrick*, 144 F. 632, 633 (8th Cir. 1906) (A transportation contract "may be orally made, and when so made, in the absence of fraud or imposition, it is as obligatory upon both the shipper and carrier as a written one.").

of lading do not set forth limitations on the carrier's liability in the case of loss or other obligations assumed by the parties; nor do they designate consignor and consignee. *See Schneider Nat'l Carriers*, 855 F. Supp. at 274; 49 C.F.R. § 373.101. These omissions are not surprising given the undisputed fact that Macy's did not have "any involvement"in the hiring of or negotiations with Estes. (Franklin Aff. ¶ 6.) Nor did Macy's ever promise to pay for shipment. (1st May Aff. Ex. D (Mulloy Dep. (94:16-19).)[9]

Furthermore, Macy's bills of lading did not modify the agreement between Estes and Sanidown, making Macy's jointly responsible. If parties enter into a contract before a bill of lading is issued, "and there is 'an irreconcilable repugnancy" between the prior contract and the bills of lading, the conflict is 'resolved in favor of the former.'" *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 955 (9th Cir. 2008) (quoting *Toyo Kisen Kaisha v. W.R. Grace & Co.*, 53 F.2d 740, 742 (9th Cir. 1931)); *accord Vanlab*, 2005 WL 43772, at *3. "It is only where the parties fail to agree or where discriminatory practices are present that the [bill of lading's] default terms bind the parties." *Oak Harbor*, 513 F.3d at 955 (quoting *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000)). The prior contract between Estes and Sanidown is irreconcilable with the bills of lading because the contract assigns liability solely to Sanidown while the bills of lading purportedly assign liability to Sanidown and Macy's jointly.

*Thunderbird Motor Freight Lines, Inc. v. Seaman Timber Co., Inc.*, 734 F.2d 630 (11th Cir. 1984) presents closely analogous facts. In *Thunderbird*, a transportation company brought suit against a lumber company for unpaid freight charges. *Id.* at 631. Like Macy's, the lumber company

---

[9] Because the bills of lading are only receipts and not contracts of carriage, Macy's failure to mark the nonrecourse provision of the bills of lading is of no consequence.

13

had not selected or negotiated with the plaintiff transportation company. *Id.* Nonetheless, the lumber company was sued because the purchaser of the lumber became insolvent, like Sanidown. *Id.* The lumber company's only role was logistical, assisting with the loading of lumber onto the plaintiff's trucks. *Id.* In the district court, the plaintiff in *Thunderbird* obtained judgment in its favor based upon the same argument raised in this case, a failure to mark the nonrecourse clause of the bills of lading. *Id.* at 631-32. The appeals court, however, reversed because any presumption that the lumber yard was responsible for freight charges was rebutted. *Id.* at 632. According to the appeals court, the lumber company had no interest in the arrangement because the contract was really between the purchaser of the lumber and the plaintiff transportation company. *See id. Thunderbird* dictates a similar result in this case.[10]

Rather than directly addressing *Thunderbird* and other applicable case law, Plaintiff emphasizes the importance of its motions to strike.[11] In doing so, Plaintiff hopes that the Court will be left to weigh the credibility of conflicting statements and possibly deny summary judgment. For example, Plaintiff filed an affidavit stating that "[o]ther than the bills of lading issued for each individual shipment, the parties did not enter into any other contract." (Mulloy Aff. ¶ 7.) This statement clearly contradicts the affidavits filed by Defendants. Nonetheless, since the Court is denying Plaintiff's motions to strike, the Court can consider Estes's e-mail admissions of its verbal

---

[10] To be sure, Macy's issued bills of lading (whereas the lumber yard did not). But this distinction is immaterial to Plaintiff's argument, which does not focus on the fact that Macy's issued bills of lading, but rather on execution of the nonrecourse clause of those bills of lading.

[11] Plaintiff does cite to *Bestway Sys., Inc. v. Gulf Forge Co.*, 100 F.3d 31, 34 (5th Cir. 1996), but that case is distinguishable. In *Bestway*, the court was confronted with bills of lading enforceable as contracts of carriage. 100 F.3d at 33-34. In the present case, Macy's bills of lading lack terms essential to making them contracts of carriage, and they were only intended as receipts.

agreement with Sanidown, and is free to ignore Plaintiff's self-serving conclusions. *O'Sekon v. Exxon Corp.*, No. CIV. 00-675(WGB), 2001 WL 1715783, *4 (D.N.J. Dec. 21, 2001) ("[A] party cannot rely upon self-serving conclusions, unsupported by specific facts in the record.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Nor is the discrepancy between the price quoted by Estes to Sanidown -- what Plaintiff calls a mere "estimate" -- and the eventual freight charges assessed to Sanidown a material fact, which forecloses summary judgment. According to the arbitration award in favor of Estes and against Sanidown, the original quote increased because "[i]t was undisputed that [Sanidown] increased the number of loads and altered the locations from which the product was to be picked up and delivered." (1st May Aff. Ex. K.) Consequently, the increase in freight charges merely reflects modifications to Sanidown and Estes's contract as a result of Estes's additional services; it is not evidence of the parties' failure to assent to the terms of the original contract. Moreover, regardless of whether Estes's price quote via e-mail deviated from its established procedures, Sanidown accepted Estes's verbal offer in this case, creating an enforceable contract. Accordingly, count one of Plaintiff's complaint is dismissed.

### 2.     Quasi-Contract

Count two of Plaintiff's complaint seeks recovery for quasi-contract based upon unjust enrichment.[12] The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. *Assocs. Comm. Corp. v. Wallia*, 211 N.J. Super. 231, 244 (App. Div. 1986). "To recover under this doctrine, the plaintiff must

---

[12] "Quasi-contractual obligations are generally based on unjust enrichment . . . ." Richard A. Lord, 1 Williston on Contracts § 1:6 (4th ed. 2009).

prove that the defendant 'received a benefit, and that retention of the benefit without payment therefor would be unjust.'" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 91 N.J. Super. 105, 109 (App. Div.1966)).

Plaintiff cannot prove that Macy's received a benefit the retention of which would be unjust. It was Sanidown -- seeking compliance with the "Macy's-Sanidown Stipulation -- and not Macy's, which received the benefit. Macy's had no part in the selection of or negotiations with Estes. Thus, count two of Plaintiff's complaint is dismissed.

### 3. Open Account

Count three of Plaintiff's complaint seeks recovery for what is styled as an "open account" or book account. *See* James H. Walzer, 52 N.J. Prac. Elements of Action § 4:1 (2009-10 ed.).[13] "An 'account' is an unsettled claim or demand, by one person against another, based on a transaction creating a debtor-creditor relationship between the parties." *Id.*; *see, e.g.*, *Harris v. Merlino*, 137 N.J.L. 717, 718-20 (E. & A. 1948).

Plaintiff's account claim fails because Sanidown is solely responsible for Estes unsettled demand. As stated, Macy's had no part in the selection of or negotiations with Estes. Nor does Macy's admit to the correctness of the account, as evidenced by its opposition to this litigation. Thus, count three of Plaintiff's complaint is dismissed.

---

[13] "A book account is based on transactions creating a debtor and creditor relation, evidenced by entries made and kept in a "book" regularly kept and used for that purpose. . . . An 'open' account has an undetermined balance and remains open in contemplation of future transactions." *Id.*

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, Defendants' motion for summary judgment is granted, and Plaintiff's motions to strike are denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

January 28, 2010